MAXWELL, J., for the court:
¶ 1. Jonathan Cooper appeals the Washington County Circuit Court’s denial of his motion for post-conviction relief (PCR). Cooper argues his attorneys were ineffective in moving to amend his indictment to include the phrase “not in necessary self-defense” rather than attempting to quash it based on the absence of that phrase. He also argues his attorneys rendered ineffective assistance in several respects in dealing with the testimony of the State’s expert in forensic pathology, Dr. Shephen Hayne. Because Cooper has failed to show (1) deficiency and (2) prejudice under Strickland, we affirm.
FACTS
¶ 2. During the early morning hours of May 25, 2002, Carolyn Cooper and Kenneth Shumaker[1] returned to Carolyn’s home from visiting nightclubs in Green-ville, Mississippi. While they were away from the house, they left Carolyn’s twin sons, Tredara and Cordera Cooper (then ten years old), and Shumaker’s son, Kinney “Shaun” Maiten (then seven years old), under Cooper’s supervision.
¶ 3. When the couple returned, Cooper was asleep on the couch. After he was awakened, the couple got into an argument. Carolyn testified that as the argument escalated, Shumaker physically attacked her several times. She claimed he first hit her in the back of the head with his fist. At another point, he grabbed her by the throat. He also hit her in the head with a cordless phone. When Cooper stood between Carolyn and Shumaker in an attempt to diffuse the argument, Shu-maker told Cooper, “I’ll beat the brakes off you, too.” When Shumaker shoved Carolyn toward the door, she ran out of the house and across the street to a neighbor’s house.
¶ 4. Tredara and Cordera both gave similar accounts of what happened after their mother left. According to their testimony, Cooper went to the back bedroom, where he attempted to make a phone call. Shu-maker followed him. Before Cooper could call anyone, Shumaker snatched the phone away and hit Cooper in the jaw with it. Shumaker then asked the boys where his baseball bat was. Shumaker began looking for the bat in other rooms of the house. But Cooper located the bat first. Cooper and Shumaker then confronted each other again — Shumaker unarmed, Cooper brandishing a bat. Shumaker attempted to hit *752 Cooper with his fist, which Cooper averted by ducking. When Shumaker swung again, Cooper hit Shumaker in the wrist with the bat. Though Shumaker did not retaliate, Cooper hit Shumaker again with the bat — this time in the head — knocking Shumaker to the ground.
¶ 5. Shaun related a vastly different version. According to Shaun, Cooper hit Shu-maker with the bat not two, but twenty times. Shaun admitted he was under the covers of the bed and could not see “anything at all.” But he claimed he peeked out and saw Cooper hit Shumaker with the baseball bat.
¶ 6. Based upon information Cooper provided at the scene, he was arrested. After executing a valid Miranda[2] waiver, he provided a statement similar to the twin boys’ version of the events. He maintained that Carolyn and Shumaker had gotten into an argument. When Cooper attempted to stop the argument, Shumaker told Cooper: “I’ll beat the breaks off you, too.” After Carolyn left the house, Shumaker swung his fist at Cooper, which Cooper dodged.
¶ 7. At this point, Cooper’s story diverges from the testimony of the eyewitnesses. Cooper claimed he picked up a pool stick. Cooper swung the pool stick at Shumaker but missed. Cooper then landed hits with the pool stick at least twice. Specifically, Cooper remembered hitting Shumaker with the pool stick once in the left arm above the elbow and once on the front of the head. Cooper made no mention of a bat.
¶ 8. The pool stick recovered by law enforcement from the scene did not have any blood on it and was not broken. The baseball bat was not recovered until two days following the incident when Carolyn contacted law enforcement about having possession of the bat at her home.
¶ 9. The State called Dr. Hayne to testify as an expert in forensic pathology. Dr. Hayne had performed an autopsy of Shu-maker’s body and identified three injuries. One injury was a “compound commuted fracture” to Shumaker’s forearm. Dr. Hayne found this injury consistent with “defensive posturing.” He explained the victim would have sustained such an injury while attempting to ward off a blow to the face or upper body.
¶ 10. Dr. Hayne also identified two head injuries. His external examination showed injuries to both the left back portion of Shumaker’s head and the left side of his head. An internal examination revealed “evidence of great force applied to the head.” In Dr. Hayne’s opinion, the baseball bat, which was entered into evidence, could have inflicted the injuries. Given the severity of Shumaker’s injuries, Dr. Hayne determined they were more likely inflicted by a baseball bat than a pool stick. He determined the manner of death to be homicide.
PROCEDURAL HISTORY
¶ 11. A grand jury in Washington County indicted Cooper for murder. Following a two-day trial, the jury convicted Cooper of the lesser-included offense of manslaughter. The circuit court sentenced him to twenty years.
¶ 12. On direct appeal, Cooper challenged the weight and sufficiency of the evidence in addition to raising an eviden-tiary issue. This court affirmed his conviction. See Cooper v. State, 911 So.2d 665 (Miss.Ct.App.2005).
¶ 13. On December 3, 2008, the Mississippi Supreme Court granted Cooper leave to file a PCR motion in the trial court. On April 7, 2009, he filed his PCR motion. *753 The circuit court held a hearing, where only Cooper testified. Finding Cooper failed to show ineffective assistance of counsel under Strickland, the circuit court denied his PCR motion.
¶ 14. On appeal, Cooper alleges his trial attorneys were ineffective. Their various alleged deficiencies include: (1) moving to amend his indictment to include the words “not in necessary self defense,” rather than seeking to quash the indictment; (2) failing to voir dire Dr. Hayne; (3) failing to sufficiently cross-examine Dr. Hayne; (4) failing to call a rebuttal expert; (5) failing to discuss discovery material with him; and (6) failing to object to the State’s introduction of certain photographs.
STANDARD OF REVIEW
1115. In considering the denial of a PCR motion, we review the trial court’s findings of fact for clear error. Rowland v. State, 42 So.3d 503, 506 (¶ 8) (Miss. 2010). “A finding of fact is ‘clearly erroneous’ when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made.” Johns v. State, 926 So.2d 188, 194 (¶ 29) (Miss.2006). We accept as true any evidence, together with the reasonable inferences that may be drawn from that evidence, which supports the trial court’s findings. Loden v. State, 971 So.2d 548, 572-73 (¶ 59) (Miss.2007). As to credibility issues, we defer to the circuit judge who is the “sole authority for determining credibility of the witnesses.” Id. at 573 (¶ 59). When reviewing questions of law, our standard is de novo. Rowland, 42 So.3d at 506 (¶ 8). The PCR movant has the burden to show by a preponderance of the evidence that he is entitled to relief. Miss.Code Ann. § 99-39-23(7) (Supp.2010).
DISCUSSION
I. Statute of Limitations
¶ 16. We begin by addressing the timeliness of Cooper’s PCR motion. Mississippi Code Annotated section 99-39-5(2) (Supp.2010) provides: “A motion for relief under this article shall be made within three (3) years after the time in which the petitioner’s direct appeal is ruled upon[.]” In Pittman v. State, 20 So.3d 51, 52 (¶ 1), 53-54 (¶¶ 9-11) (Miss.Ct.App.2009), we found a PCR motion was timely where the movant sought leave to file a PCR motion in the trial court[3] within the three-year limitation period and the supreme court granted leave. Similarly, on July 21, 2008, Cooper filed a “Motion for Complaint for Fraud and Deception” — which the supreme court considered to be an application for leave to proceed in the trial court — within three years after this court decided his direct appeal. See Cooper v. State, 911 So.2d 665 (Miss.Ct.App.2005) (final mandate issued October 11, 2005). The supreme court granted Cooper leave. In accordance with Pittman, we find Cooper’s PCR motion is timely.
II. Ineffective Assistance of Counsel
¶ 17. To show ineffective assistance of counsel, Cooper must establish: (1) his attorneys’ performance was deficient, and (2) the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To qualify as deficient, an attorney’s performance must fail to meet “an objective standard of reasonableness.” Id. at 688, 104 S.Ct. 2052. There is a “strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, ... the challenged action might be considered sound trial strategy.” *754 Id. at 689, 104 S.Ct. 2052 (quotations omitted). For prejudice to exist, there must be a “reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. at 694, 104 S.Ct. 2052.
¶ 18. The PCR movant has the burden to show both prongs of Strickland are met. Moody v. State, 644 So.2d 451, 456 (Miss. 1994). His allegations under both prongs must be pled with specific detail. Jenkins v. State, 986 So.2d 1031, 1035 (¶ 14) (Miss. Ct.App.2008) (citing Brooks v. State, 573 So.2d 1350, 1354 (Miss.1990)). And the movant may not rely on mere allegations in his affidavit or brief. Vielee v. State, 653 So.2d 920, 922 (Miss.1995). We review whether the movant has made the required showing under each prong of Strickland based on the totality of the circumstances. Carney v. State, 525 So.2d 776, 780 (Miss.1988).
A. Indictment
¶ 19. Cooper first claims his counsel rendered ineffective assistance by moving to amend his indictment for murder to include the words “not in necessary self-defense” rather than moving to quash the indictment for failure to include this language. Cooper’s original indictment alleged:
JONATHAN DEWAYNE COOPER, on or about [the] 25th [d]ay of May, 2002, in Washington County, did unlawfully, wilfully, feloniously, and with malice aforethought, did [sic] then and there kill and murder one Kenneth Shumaker, a human being against the peace and dignity of the State of Mississippi.
¶ 20. We recently rejected an argument virtually identical to Cooper’s. See Man-gum v. State, 64 So.3d 503 (Miss.Ct.App. 2010) (cert, denied June 30, 2011). In Mangum, the PCR movant claimed his indictment for murder was defective because it did not include the words “not in necessary self-defense.” Id. at 503 (¶ 1). We held: “the phrase ‘not in necessary self-defense’ is encompassed in the word ‘unlawful.’ Therefore, we find ... Man-gum’s indictment was legally sufficient as it contained the word ‘unlawfully.’ ” Id. at 507 (¶ 12). We reasoned “unlawful” is defined as “not authorized or justified by law.” Thus, a charge that a lolling was “unlawful” would necessarily include the allegation it was not legally justified because of self-defense. Id.
¶ 21. As in Mangum, because Cooper’s original indictment alleged Cooper committed the killing “unlawfully,” it was not defective. Since a motion to quash, if made, would not have been properly granted, Cooper cannot show prejudice under Strickland. See Geiger v. Ccdn, 540 F.3d 303, 309-10 (5th Cir.2008) (to show prejudice from an attorney’s failure to make a certain motion, the defendant must show trial court would have granted the motion or would have committed reversible error in refusing it); United States v. Kimler, 167 F.3d 889, 893 (5th Cir.1999) (“An attorney’s failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.”). Nor do we find any prejudice from the inclusion of the phrase “not in necessary self-defense” in the amended indictment, at Cooper’s attorneys’ request. The phrase was unnecessary, but its inclusion had no detrimental impact on Cooper’s defense. As a result, the phrase is surplusage. See Neal v. State, 936 So.2d 463, 469 (¶20) (Miss.Ct.App.2006).
¶ 22. Because Cooper has not shown his attorneys’ conduct relating to his indict *755 ment might have altered the outcome of the proceeding, he has not shown prejudice under Strickland. Accordingly, his ineffective-assistance-of-counsel argument fails on this issue.
B. Dr. Hayne
¶ 28. Cooper raises several arguments relating to Dr. Hayne’s testimony. First, Cooper claims his attorneys were ineffective for their “unconditional and open-armed acceptance” of Dr. Hayne as an expert in forensic pathology and their failure to voir dire him. Second, Cooper contends his attorneys did not sufficiently cross-examine Dr. Hayne. Third, Cooper claims his attorneys should have offered expert testimony to challenge Dr. Hayne’s testimony.

1. Failure to Challenge Dr.

Hayne’s Qualifications

¶ 24. We acknowledge that Dr. Hayne’s work has received criticism. Though the Mississippi Supreme Court rejected his two-shooter theory in Edmonds v. State, 955 So.2d 787, 792 (¶8) (Miss.2007), we note in Edmonds the supreme court made abundantly clear that “Dr. Hayne is qualified to proffer expert opinions in forensic pathology [.] ” (Emphasis added). And since Edmonds, the supreme court has consistently found Dr. Hayne qualified to render expert opinions in the field of forensic pathology in criminal cases. See Moffett v. State, 49 So.3d 1073, 1110-11 (¶¶ 126-27) (Miss.2010); DeHenre v. State, 43 So.3d 407, 417 (¶40) (Miss.2010); Nelson v. State, 10 So.3d 898, 904 (¶ 26) (Miss. 2009); Lima v. State, 7 So.3d 903, 907 (¶ 17) (Miss.2009).
¶ 25. We do not find Cooper’s attorneys’ performance deficient for merely failing to challenge Dr. Hayne’s qualifications. In Conway v. State, 48 So.3d 588 (Miss.Ct.App.2010), where the PCR mov-ant raised an identical argument, we observed: “Following the State’s voir dire of Dr. Hayne, we can hardly fault Conway’s trial counsel for choosing not to further question Dr. Hayne as to his extensive qualifications.” Id. The same is true here. In addition, an attorney’s decision to make certain objections generally “falls within the realm of trial strategy and is not grounds for a claim of ineffective assistance of counsel.” Id. at 600 (¶ 19) (citing Spicer v. State, 973 So.2d 184, 203 (¶69) (Miss.2007)).
¶ 26. Cooper has also failed to explain how testing Dr. Hayne’s qualifications might have altered the result of his trial. He mentions in his PCR motion that his attorneys’ failure to object to Dr. Hayne’s qualifications barred the issue for the purposes of appeal. But Cooper has not shown a corresponding basis for reversal of his conviction. As already explained, our supreme court has emphasized Dr. Hayne is qualified as an expert in forensic pathology. See, e.g., Moffett, 49 So.3d at 1110-11 (¶¶ 126-27). Thus, we do not find it reasonably probable his attorneys’ failure to object to Dr. Hayne’s qualifications affected the outcome of his case. Cooper fails to meet either prong of Strickland on this issue.

2. Failure to Sufficiently Cross-Examine Dr. Hayne

¶ 27. Cooper also asserts Dr. Hayne’s testimony suggests Cooper struck the victim, Shumaker, in the head with a baseball bat at least two times. Maintaining that he only struck Shumaker in the head once, Cooper contends his attorneys should have cross-examined Dr. Hayne concerning the number of blows to Shumaker’s head.

a. Dr. Hayne’s Testimony

¶ 28. Dr. Hayne identified two injuries to Shumaker’s head. Dr. Hayne’s external examination showed one injury to the left back portion of the head, where “the skin was torn and ripped, slightly irregular, *756 measuring approximately one inch in length.” The other injury was “an abrasion or scraping of the skin” on the left side of the victim’s head. The photographs introduced into evidence depict these two external injuries to Shumaker’s head.
¶ 29. Dr. Hayne also conducted an internal examination. Though noting that the external injuries to Shumaker’s head “appear fairly superficial,” Dr. Hayne stated his internal examination revealed “evidence of great force applied to the head.” He found Shumaker’s death was caused by “blows to the head” and opined a baseball bat could have inflicted the injuries.
¶ 30. Dr. Hayne also testified there was a third injury to Shumaker’s body — a “compound commuted fracture” to the forearm, which he determined was consistent with “defensive posturing.”
¶ 31. On cross-examination, one of Cooper’s attorneys questioned Dr. Hayne about the injury to Shumaker’s forearm. When asked whether the injury could have been something other than a defensive posturing injury, Dr. Hayne responded affirmatively. Cooper’s attorney also posited that the victim could have been swinging his fist at Cooper at the time he sustained the forearm injury. And Dr. Hayne admitted, “I could not exclude that.” Still, Cooper contends his counsel performed deficiently by not questioning Dr. Hayne concerning Shumaker’s head injuries.

b. Strickland

¶ 32. Cooper offers little explanation of how a more thorough cross-examination would have altered the outcome of his trial. He simply points out Dr. Hayne’s testimony was inconsistent with other trial testimony as to the number of blows to the victims head. Cooper has shown us no credible proof that Dr. Hayne’s testimony that the victim received two head injuries is unreliable. Based on the record before us, including the photographs of the injuries to the victim’s head, we cannot find Cooper’s attorneys deficient for choosing to limit cross-examination to the “defensive-posturing” issue.
¶ 33. Cooper also fails to show resulting prejudice because he has not established, by a reasonable probability, that any further questioning of Dr. Hayne would have resulted in Cooper’s acquittal. Further, he fails to plead the prejudice prong with the required specificity. Jenkins, 986 So.2d at 1035 (¶ 14) (citing Brooks, 573 So.2d at 1354).
¶ 34. Cooper cites Edmonds as supporting authority. In Edmonds, the supreme court reversed and remanded the defendant’s (Edmonds’s) murder conviction. Dr. Hayne testified at Edmonds’s trial that, more likely than not, two shooters had pulled the trigger at the same time, discharging the fatal shot. Ed-monds, 955 So.2d at 791-92 (¶7). The supreme court found Dr. Hayne’s testimony concerning his two-shooter theory unreliable and improperly admitted. Id. at 792 (¶¶ 7-9).
¶ 35. But here, unlike Edmonds, Cooper does not argue Dr. Hayne applied unreliable principles or methods in forming his opinion. See M.R.E. 702. Nor does Cooper suggest Dr. Hayne’s opinion was not based upon sufficient facts and data presented in the case. See id. Because we find nothing in the record to indicate Dr. Hayne’s testimony was unreliable or otherwise inadmissible, Edmonds is inapplicable. See Moffett, 49 So.3d at 1110-11 (¶¶ 126-27); Lima, 7 So.3d at 907-08 (¶¶ 14-20).
¶ 36. While there were varying accounts of how many blows Cooper received, there is often factually conflicting evidence in criminal cases. And it is the *757 sole province of the jury to resolve conflicts and make witness-credibility determinations. Gathright v. State, 880 So.2d 1276, 1278 (Miss.1980). Cooper’s concern with Dr. Hayne’s testimony relates to the weight of the evidence, not its admissibility. This court has already rejected Cooper’s challenge to the weight and sufficiency of evidence on direct appeal. Those issues are not before us today.
¶ 37. For these reasons, we find Cooper has failed to make his required showing on this issue.

3. Failure to Call Rebuttal Expert

¶38. Cooper claims his attorneys should have called a rebuttal expert. However, Cooper neither establishes that contradictory expert testimony exists, nor shows the substance of any such testimony. Thus, he cannot prove prejudice under Strickland.
¶ 39. Cooper cites the Mississippi Supreme Court’s decision in Howard v. State, 945 So.2d 326 (Miss.2006) as support. In Howard, the supreme court found deficient performance in defense counsel’s decision not to call an expert witness to rebut the State’s expert. Id. at 352 (¶ 52). However, the PCR movant, Howard, supported his claim with “numerous expert affidavits and other documents” attacking the State expert’s testimony. Id. at (¶ 53). “These affidavits and other documents point out how many times [the State’s expert] has been proven wrong and they discuss how unscientific his methods are.” Id. Here, Cooper has not supported his claim with affidavits or other evidence criticizing Dr. Hayne’s methodology.
¶ 40. Further, and equally pertinent to our analysis, we note that despite the numerous affidavits and documents offered by the PCR movant in Howard, the supreme court still found no resulting prejudice. Id. The court held that “in order for Howard to show that the result of the proceeding would have been different, he must offer an affidavit from an expert witness who rebuts the State’s expert testimony.” Id. Though the extensive material offered in Howard disparaged the State’s expert and his methods, no potential rebuttal expert was willing to conclude the State’s expert’s opinions were incorrect. As a result, the supreme court found no prejudice. Id. Under Howard’s reasoning, Cooper falls far short of the required showing of prejudice, as he fails to point to any expert testimony refuting Dr. Hayne’s conclusion concerning the number of blows to the victim’s head. We further note that Cooper was the sole -witness at his PCR hearing. He neither attached affidavits to his motion nor identified contrasting expert testimony.
¶ 41. Cooper fails to meet his burden on this issue.
C. Failure to Discuss Discovery Material
¶ 42. Cooper contends his attorneys were ineffective because they “did not share discovery materials or trial strategies [with him] ... during the investigation stage of his case.” But when Cooper testified at his post-conviction evidentiary hearing, he could not refute that his attorneys had reviewed his entire file. He also failed to even allege what specific information they failed to discuss with him. Nor does he allege with any specificity how this alleged non-disclosure affected the outcome of his trial. Because Cooper has failed to plead this issue with the specificity required, he is not entitled to relief. Jenkins, 986 So.2d at 1035 (¶ 14) (citing Brooks, 573 So.2d at 1354) (claims of ineffective assistance of counsel must be specifically pled on both prongs of Strickland ); Finley v. State, 739 So.2d 425, 428 (¶¶8, 10) (Miss.Ct.App.1999) (finding PCR movant’s similar ineffective-assistance-of- *758 counsel argument based on attorney’s alleged failure to discuss discovery material was not pled with required specificity).
D. Photographs
¶ 43. Cooper also argues his counsel was ineffective for failing to object to the admission of autopsy photographs taken by Dr. Hayne and admitted at trial. Cooper specifically challenges a photograph depicting one of the victim’s head injuries, which he contends was more prejudicial than probative.
¶ 44. We review a trial court’s admission of photographs for an abuse of discretion. Dampier v. State, 973 So.2d 221, 230 (¶ 25) (Miss.2008). “The discretion of the trial judge is almost unlimited regardless of the gruesomeness, repetitiveness, and the extenuation of probative value.” Id. (internal quotations omitted). “So long as a photograph has probative value and its introduction serves a meaningful evidentiary purpose, it may still be admissible despite being gruesome, grisly, unpleasant, or even inflammatory.” Id. (internal quotations omitted). “A photograph has a meaningful evidentiary purpose when it: (1) aids in describing the circumstances of the killing; (2) describes the location of the body or cause of death; or (3) supplements or clarifies witness testimony.” Chamberlin v. State, 989 So.2d 320, 340 (¶ 73) (Miss.2008). “Some probative value is the only requirement needed in order to support a trial judge’s decision to admit photographs into evidence.” Id[4]
¶ 45. Mississippi Rule of Evidence 401, which defines relevant evidence,[5] favors admission “[i]f the evidence has any probative value at all[.]” M.R.E. 401 cmt. Mississippi Rule of Evidence 403 allows relevant evidence to “be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” (Emphasis added).
¶ 46. We find the photographs here meet all three prongs of the test for “meaningful evidentiary purpose,” only one of which need be met. The photographs (1) aid in describing the circumstances of the killing, (2) describe the cause of death, and (3) supplement and clarify Dr. Hayne’s testimony. Indeed, Cooper highlights the significance of the number of blows to the victim’s head in other issues raised in this appeal. The photographs, which we do not find to be gruesome, depict the victim’s injuries and arguably aid in illustrating the number of times Cooper struck the victim. For these same reasons, we also find the photographs easily pass through the filter of Rule 403.
¶ 47. Any objection to the photographs would have been unsuccessful and immaterial to the outcome of the trial. Therefore, we find Cooper fails to show either deficiency or Strickland prejudice.
¶ 48. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AF *759 FIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ROBERTS AND RUSSELL, JJ., CONCUR. IRVING, P.J., AND ISHEE, J., CONCUR IN PART AND IN THE RESULT. MYERS AND CARLTON, JJ., NOT PARTICIPATING.

. We note that the victim is referred to as "Shumake” at some points in the trial transcript.

. See Miranda v. Arizona, 396 U.S. 868, 90 S.Ct. 140, 24 L.Ed.2d 122 (1969).

. See Miss.Code Ann. § 99-39-7 (Supp.2010).

. We note that the supreme court in Chamberlin recognized McNeal v. State, 551 So.2d 151 (Miss. 1989) as the "solitary instance where [the supreme court] held a photograph, a close-up of the victim’s partly decomposed skull, was gruesome and lacked an evidentia-ry purpose and was more prejudicial than probative[.]” Chamberlin, 989 So.2d at 340 (¶ 73).

. The definition of relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” M.R.E. 401.